May it please the court. Good morning. My name is Ronald Norwood and I will be arguing on behalf of Officer Eddie Boyd and the City of Ferguson. This appeal and the circumstances that confronted Officer Eddie Boyd can be summed up in one word. And that one word is no. No front license plate. No visibility because of heavily tinted windows. No seat belt even though the vehicle was in operation. No compliance and no reasons proffered for that noncompliance. No valid driver's license or registration. No valid Florida address. But most significantly, no clearly established law presented by Mr. Watson. So we believe that as a matter of law, Officer Boyd is entitled to qualified immunity and as a result, Officer Boyd and the city are entitled to judgment in their favor as a matter of law. Now I would like to start and focus on the second prong of the qualified immunity analysis which is the clearly established law prong. And that required that Mr. Watson present cases, controlling authority or robust consensus of persuasive authority that placed each of these various constitutional questions beyond debate. Beyond debate at the time of the incident, in this case, August of 2012. Now as the court is aware, the city of Escondido case, United States Supreme Court case, as followed by this court last year in the Bordeaux case and the Shelton v. Stevens case, that the clearly established law prong requires particularity that the case must be particularized to the facts of this case, in this case. It requires that a case show that an officer acting under similar circumstances was held to have violated the Fourth Amendment and in addition, in this court's decision in Rogers v. Knight, qualified immunity also protects an officer who reasonably interprets an unclear statute. And so we believe that Mr. Watson has not, cannot identify any factually analogous cases that established that any of the various constitutional questions were beyond debate. And I want to tick through a few legal propositions that we think, coupled with the undisputed material facts that we have in the community, and I'm going to go through each of those. Number one, any traffic violation, even a minor traffic violation, gives an officer probable cause to stop and arrest the violator. That's per Atwater v. the city of Lago Vista, United States Supreme Court, 2001, Neves v. Bartlett, 2019. The second proposition is that so long as an officer has probable cause for a single violation in a multi-violation case, that is sufficient to justify the stop, the seizure, and the arrest, and that's per this court's decision in Foster v. Metro Airport and various other cases we cite. Proposition number three, the failure to have a front license plate alone where it's required by law is sufficient to for the stop, investigation, and where it's established there was no front plate and arrest in that circumstance. And there's no dispute in this case that Mr. Watson didn't have a front plate. He was backed into the space without a front plate. We cite United States v. Smart, United States v. Givens, two cases by this court that established that that absent front plate is sufficient, and Mr. Watson cites no factually analogous, no front license plate case to the contrary. The fourth proposition is the presence of heavily tinted windows provided adequate reasonable suspicion, probable cause for the stop and investigation, and there's no dispute that Mr. Watson had heavily tinted windows. He had heavily tinted windows for a purpose according to his undisputed testimony. He had heavily tinted windows to one could look in the vehicle and tell it was an African-American driving that vehicle. Per his own testimony, we cite cases United States v. Boyd, Western District of Missouri, United States v. Slaughter, the Eastern District of Missouri, and Mr. Watson cites no clearly established case to the contrary relating to tinted windows. The fifth proposition is that an officer may investigate and charge an individual idling in a vehicle with the ignition for failing to wear a seatbelt because the vehicle is in operation. And that is per the Missouri Supreme Court's decision in Cox v. The Director of Revenue and this court's decision in Williams v. Decker which was decided in 2014. The next proposition is that both Illinois and Missouri law require a resident to properly register a vehicle within 30 days of that residency and to obtain a new driver's license within 90 days of establishing that residency. And in this case, there is no dispute whatsoever that Mr. Watson resided in Illinois and he had not resided in Florida for over seven years per his own admissions. Missouri law also required that he was to surrender his Missouri driver's license in order to of those rendered his license and registration invalid as a matter of law. And Mr. Watson cites no factually analogous invalid driver's license case to the contrary. The next proposition, well-established proposition is that an individual's subjective intentions, even though they might be innocent, even though they may be justifiable from a subjective standpoint, if it can be received by a reasonable officer as noncompliance. And that does not negate reasonable suspicion or probable cause and that's per this court's decision in Peterson v. Copp, Carpenter v. Gage. So the fact that Mr. Watson ignored repeated requests to throw out his keys, which he did, ignored repeated requests to exit his vehicle, which he did, that's undisputed, and the fact that he failed to offer his license and proof of insurance for whatever subjective reason does not negate the fact that that noncompliance, that constitutes resistance under various holdings by this court and provided further probable cause for Officer Boyd. Counsel, does it matter here that the officer, correct me if I'm getting the facts wrong, but basically ordered the plaintiff to keep his hands on the wheel? Does that change your analysis or our analysis at all here? Because it seems like some of the things that occurred here were because of the officer's own orders and conduct in effectuating this arrest. Well, Your Honor, as the testimony establishes that it wasn't until after he picked up the phone, and this would have been after requests were made for him to provide that pedigree information and started dialing according to him, he was calling the police on the police, and it was at that point or thereafter when the gun was drawn for 10 seconds. So we believe that the notion about keeping the hands on the wheel where he failed to provide his license, proof of insurance, or anything of that sort in response to questions we believe would not be dispositive in this case. Now, in Clark v. Clark, this court noted that the reasonableness of the seizure is determined by the totality of the circumstances. We heard about that in the last case. And so one must look at all of the circumstances involved in this case, and it must be viewed from the reasonable officer on the scene irrespective of the officer's underlying intentions or motivations. So that's a well-established proposition. You know, I hate to do this, but I want to jump ahead to an issue that as I looked at the briefs, I kept having questions about. And that is, there's a claim here that there was an unlawful search and that that was in violation of Mr. Watson's constitutional rights. And if you look at the search, the claim is this is a search incident to an arrest. Now, if it's a search incident to an arrest, it's got to be tied to, you know, looking for, because Watson's in the backseat of the patrol car. You no longer have, you're not searching sort of the wingspan to see items he can get a hold of that could cause officer safety issues. At this point, now you're looking for things that would actually show evidence of the crimes that he suspected of. And he suspected of not wearing a seat belt, not having a front license plate, having excessively tinted windows. And I'm having a hard time trying to figure out, well, what additional evidence are you looking for on that search that relates to seat belts or tinted windows or the license plate? Well, and that's a great question, Your Honor. As the officer, Boyd didn't know who this individual was. They had called for backup. They had arrested him. Ultimately, he got out of the car. They put him in a vehicle. They still didn't know where he is, who he was. And under this court's decision in United States versus Mensa and United States versus Smith, a warrantless search of a vehicle is permissible to establish the identity of the individual we have under arrest. And we don't even know who he is. There was a search of the vehicle. And based on the search, and there's no dispute about this, based on that search, paperwork was found that identified his legal name, Freddie Watson. That was all plugged into Regis. And based on that, it was determined who he was. And so we believe that those cases, those two cases establish that, in fact, a reasonable officer searching to identify an individual and ultimately identifying that individual is wholly proper and does not violate the Constitution. I also want to touch on briefly the notion about drawing the gun, pulling the gun. There's no dispute based upon Mr. Watson's testimony that he drew the gun for 10 seconds, 10 seconds. And I would like to direct the court's attention to Judge Erickson's decision in Clark versus Clark. And in that case, Judge Erickson rejected a slew of gunpointing cases cited by the plaintiff in that case because they were not factually analogous. And the reason they were not factually analogous and the reason that the cases cited by Mr. Watson aren't factually analogous is because the suspects were seized and held at gunpoint for what Judge Erickson determined was an unreasonably long period of time, well after the police had taken control of the situation. And just to quote from that decision, the court indicated, quote, a reasonable officer was justified in believing the situation was not fully under control until the plaintiff had been removed from the vehicle, patted down, and restrained. Judge Erickson went further and said, quote, pointing a firearm at the plaintiff for a few seconds while removing him from his vehicle did not constitute excessive force and did not violate the Fourth Amendment. And so we believe, and it looks like I have ended my two-minute reservation, that the bottom line is that no clearly established law has been cited. And under well-established precedent, Officer Eddie Boyd is entitled to qualified immunity. And if there are no further questions, I will reserve the balance of my time. Thank you very much, counsel. Mr. Waldron. May it please the court. Your Honor, Jack Waldron. I represent the appellee, Mr. Fred Watson. The facts before the court today are that Mr. Boyd violated Mr. Watson's First Amendment constitutional rights to be free of retaliation and four separate violations of his Fourth Amendment. This incident, in which Officer Boyd pointed his gun at Mr. Watson's head, threatened to kill him, and brought nine charges against him, ended up costing Mr. Watson his job with the federal government, where he had obtained top-secret clearance and had made a six-figure income. In their argument today, just as in their briefs and at their argument below, the appellants are improperly trying to rely on all the facts that are best for them without paying attention to any of the facts that are in Mr. Watson's favor. As this court is aware, it only has jurisdiction when there is not a dispute of material facts, but rather it's just addressing issues of abstract law. The court below found that there were many issues of material facts that prohibited summary judgment. While this court would have jurisdiction in order to right, the appellants have consistently avoided and distorted those facts because what they describe is a clear violation of a clearly established constitutional law. On page 27— Counsel, sorry to interrupt, but just to clarify for my benefit, what are—can you just, in a few words, what are the four search and seizure violations that are alleged? Yes, Your Honor. If I have to explain them, just give me the names. If we're talking about the four Fourth Amendment violations, we're talking about Mr. Watson's seizure without reasonable suspicion, we're talking about the excessive force from pointing at gunpoint, his arrest without any probable cause, and then fourth is the search without any exception to the warrant requirement. So those are the four Fourth Amendment claims, and in addition to that, we have this First Amendment retaliation claim against Officer Boyd as well. And that is—what are the facts that support that? The facts that support that are simply as follows. The facts in the record show that Mr. Boyd approached Mr. Watson, became very aggressive with him, accused him of being a pedophile, and when Mr. Watson expressed displeasure with that, Officer Boyd proceeded to pull his gun on Mr. Watson, pointed at his head at point-blank range, and threatened to kill him. In addition to that, he then pulled Mr.—he got Mr. Watson out of his car, and he charged Mr. Watson with nine different charges, each of which Officer Boyd is required to have probable cause for. So for the retaliation judge, it's not only the gunpoint, it's not only the fact that he later ransacked his car, but in addition to that are these nine charges that lack probable cause. As an example of the appellant's attempt to ignore facts that don't favor them, on page 27 they say, Watson refused request to provide driver's license or insurance. Well, it's important that we understand the facts that would have been in front of Officer Boyd at that point, and which Mr. Watson would have encountered as well. And in those facts, Officer Boyd had just got done pulling a gun on Mr. Watson, threatening him and threatening to kill him. Additionally, one thing that the appellant's counsel left out is that it's in the record that Mr. Watson only did not provide his license after the gunpoint, after this moment in which he had been threatened to be killed, and that he told the officer that he couldn't reach it in the back of his car at this point. And to be clear, as the court noticed earlier, Mr. Watson's hands were at the 10 and 2 position. He followed all instructions, and there's no argument at any point that the phone that he reached for was suspected to be a weapon or anything like that. Officer Boyd acknowledged that he knew that Mr. Watson was reaching for a phone and not for a weapon. I want to talk about qualified immunity because Officer Boyd's actions violate long-held and clearly established rights that bar retaliation under the First Amendment and the Fourth Amendment. As this court's aware, officials are not liable under qualified immunity for bad guesses in gray lines. Perhaps, according to the best facts for the appellants, Officer Boyd may have made a bad guess in some gray areas. However, the facts that we're confronted with today, which are Mr. Watson's facts, show that Officer Boyd did much more than make a bad guess. Officer Boyd carried out a series of retaliatory actions that ignored clear evidence in front of him and that were intended to threaten Mr. Watson and to punish him for questioning the officer's behavior. Two months ago, in fact, after Escondido, the case that the appellant cited, this court in Quirici found that an exact match is not necessary if the constitutional issues are beyond debate. And in that case, it was a First Amendment retaliation case, and it cited a host of previous First Amendment law in this circuit that has shown that whether it's questioning an officer's behavior, whether it's asking for his badge number, that is constitutionally protected activity that an officer is not free to merely retaliate against somebody. In addition, recently in Taylor v. Riojas, the Supreme Court reversed the Fifth Circuit, saying that with certain types of egregious behavior, a general constitutional rule may apply with obvious clarity. And then they quoted Hope v. Pelzer saying that an officer would be on fair warning that his conduct was not permitted. Here, we've got to look at what actions are before the court. We see that not only does Mr. Boyd approach Mr. Watson, act aggressively, yell at him, but Mr. Watson follows every step that Officer Boyd asks before the gunpoint except to provide his Social Security number. To follow that up, Officer Boyd pulls his gun, threatens to murder him, he arrests him, charges him with nine false charges, and then he ransacks his car. This is not a reasonable mistake. This is instead what this court found in S.L. v. Lenderman in intentional abuse of a person's rights. And for that reason, Officer Boyd is simply not entitled to qualified immunity. Counsel, a question for you. Would you concede that based on the facts that presented themselves to the officer that the officer had a probable cause or a reasonable basis to investigate the vehicle and the driver? And I'm talking about no tag on the front of the vehicle and the tinted and tinted windows. At least to investigate and approach the vehicle and talk to the driver. Sure. And Judge Shepard, this is where the district court found that there was actually material dispute of fact about what Officer Boyd knew at the time he seized Mr. Watson. And the reason for that is if you read the appellant's brief, it would appear as though Officer Boyd has consistently said that the two reasons why he seized Mr. Watson were because of the no front plate and because of the tinted windows. In reality, Officer Boyd has suggested seven or eight different reasons that he has generated after this stop and during the course of the lawsuit that he has used to attempt to justify that. For instance, he suggested the presence of children nearby, that that might somehow raise reasonable suspicion at a park. And the district court found that to be incredible. He also said that there was a playground 30 to 40 feet nearby, and that raised his suspicion. That fact is controverted. Judge Shepard, this court has held that when a witness's testimony is necessary to carry his burden of proof, at the summary judgment stage, his testimony must be, it must be unbiased, it must be competent, and it must be internally consistent. What we see here... Well, I mean, this is an objective test though, isn't it? I mean, the subjective motivations here in a qualified immunity setting don't matter. Isn't that fair? Maybe I'm slightly misunderstanding your argument. I suspect I am, but... No, Judge Kobus, I appreciate what you're saying. And I agree with you that this is not, we're not inquiring into Officer Boyd's motivation. But what we are looking at is what he was necessarily aware of at that point. And Devon Peck, a case that was cited by the appellants, it says, while the officer's motive may be irrelevant, what is relevant is what he knows. And Judge White below found that because of all of these different reasons that were suggested by Officer Boyd, because some of them are contradictory, because some of them don't make sense, it is simply a matter for the jury that at that moment, we don't know what Officer Boyd had in mind. It's entirely plausible that only during his seizure... I think you're sliding off into the realm of subjective belief or knowledge. And all I'm asking about is, it seems to be uncontroverted that the vehicle was backed into a parking spot, it didn't have tags on the front, and some of the windows were tinted. Don't you agree that that's factually true? Your Honor, I agree, though, that is factually true. Okay, and my question is, based on that, wouldn't a reasonable officer be warranted in approaching the vehicle and investigating, and striking up a conversation with the driver? Your Honor, if that is in fact what Officer Boyd knew at the time, then it would be. However, the district court below thought that there were too many different issues that had been suggested by Officer Boyd, and that there was a dispute of facts. You're talking subjective again. And, well, I don't want to take up your time, but... Go ahead, Judge Erickson. But here's the real issue as I see it. As the officer approaches the vehicle, the vehicle does not have a front license plate, and the windows are tinted. And as he gets closer, he observes he's not wearing a seat belt, all three of which would give rise to reasonable articulable suspicion, right? And at that point, the officer's got the right to ask some questions and try and figure out what's going on. And in fact, he probably has probable cause if there's not some explanation. I mean, the front tag, ultimately, there could be an explanation that says it's a car registered in Florida, it's not required to have a front tag. And that would be legally true, and there's no crime there, but he's got the right... He's got a reasonable articulable suspicion enough to start this conversation. And it seems to me that when Judge White made this finding that there was just all these fact questions, it sort of ignored that a reasonable officer in the officer's position, Boyd's position, would have had an articulable suspicion, right? And we don't really care he's got it in his brain so much as whether or not that reasonable and articulable suspicion exists, or am I wrong? Well, Judge, I draw the court's attention to the United States versus real property case, which talks about the necessity at the level of summary judgment for testimony to be consistent. But however, even if Officer Boyd did have reasonable suspicion to come up to Mr. Watson and to ask him some questions, that does not obviate the fact that he needs probable cause or arguable probable cause for each of the nine separate charges that he brought against Mr. Watson. And let's be clear, those charges were brought after Officer Boyd draws his gun, points it at Mr. Watson and threatens him where there's no issue that's before the court that there was a suspicion of weapons or that there was a danger. At most, all Officer Boyd suspected Mr. Watson of is a license violation. I want to be clear, Judge Kobus here, the argument that the officer needed probable cause for all nine citations, that relates directly to your First Amendment claim. Is that correct? That doesn't relate to your Fourth Amendment claims. Am I hearing you right? Yes, that's correct, Judge Kobus. Okay. Thank you. Do you have another question, Judge? Okay. I see that I've only got about a minute left and I want to address a couple of issues raised by Appellant's counsel. One is the Clark case. Mr. Norwood mentioned the fact that with the gunpoint issue, that if it's longer than necessary, if the gunpoint is longer than necessary or prolonged based on the danger, then it's unlawful. And what's clearly established in this circuit is that Officer Boyd's conduct was unlawful because he initiated this issue. He's the one who came up during a traffic stop, threatened my client and then drew his gun. He can't then, after the fact, try to generate this idea that there was danger or that it was necessary in order to calm the situation, when in fact it was Officer Boyd himself who had generated these problems themselves. I want to be clear about one other issue and that's the Monell claim. That's the claim against the city of Ferguson. If this court were to find qualified immunity, that would not obviate the Monell claim against the city because this court is held in Owens versus City of Independence and Shannon versus Kohler, that the city has its own liability. Based on the actions of Officer Boyd that are before the court today that must be construed in Mr. Watson's favor, we ask that this court affirm the denial of summary judgment because of the wealth of disputed material facts. Thank you. Okay, Mr. Norwood. Thank you, Your Honor. I'd like to address your question, Judge Shepard. One of these well-established propositions is one that was reiterated in 2019 by the U.S. If probable cause exists for the stop, the investigation, and the charge, any claim for retaliation is precluded as a matter of law, point blank. To address the issue of the reasonable officer standard, the court is exactly right. That's the focus. In this case, a reasonable officer on the scene, unless he wore glasses or was blind, could not help but see the fact that there was no front license plate and the fact that it was pulled in, you couldn't tell what was on the rear plate at that juncture. A reasonable officer on the scene could not have helped but to see these heavily tinted windows that were installed to reduce racial profiling. A reasonable officer on the scene would have expected someone, in response to what is your name and address, to provide their legal name and their legal address, not some address that I lived in seven years ago down in Florida. A reasonable officer presented with these after asking, requesting an individual to exit his vehicle and throw out his keys that was refused without offering any reason why, which prompted backup to be called. A reasonable officer would have arrested him for those violations and a reasonable officer would have searched that vehicle to try to identify who this individual was, which is exactly what Officer Boyd did in this case. And based upon all of that, we believe that Officer Boyd is entitled to qualified immunity and the city, as a result of the fact that there was no constitutional violations anywhere across the board, would likewise be entitled to summary judgment in its favor. Thank you. All right, counsel. Thank you very much for your arguments. Case is submitted.